1

2

3

4

5

```
                                    FILED
                            CLERK, U.S. DISTRICT COURT

                            SEP 18 2024

                            CENTRAL DISTRICT OF CALIFORNIA
                            BY: _____rsm_____ DEPUTY
```

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                      January 2024 Grand Jury

11   UNITED STATES OF AMERICA,          CR No. 23-461(A)-MCS

12           Plaintiff,                 F I R S T
                                        S U P E R S E D I N G
13           v.                         I N D I C T M E N T

14   OMAR NAVARRO,                      [18 U.S.C. § 371: Conspiracy;
     DORA ASGHARI, and                  18 U.S.C. § 1343: Wire Fraud;
15   ZACHARIAS DIAMANTIDES-ABEL,        18 U.S.C. § 1519: Falsification
                                        of Records; 52 U.S.C. §§ 30109(d),
16           Defendants.                30114(b)(1): Prohibited Use of
                                        Campaign Contributions; 18 U.S.C.
17                                      § 981(a)(1)(c) and 28 U.S.C.
                                        § 2461(c): Criminal Forfeiture]
18

19

20        The Grand Jury charges:

21                      INTRODUCTORY ALLEGATIONS

22        At times relevant to this First Superseding Indictment:

23   A.   BACKGROUND ON THE ELECTORAL PROCESS

24        1.   United States citizens have a right to choose their

25   political representatives through free and fair elections.  To ensure

26   the integrity, accountability, and transparency of federal elections,

27   Congress enacted a series of laws governing campaign fundraising and

28   spending.  Among other things, these laws strictly regulate the use

of funds donated to candidates for federal office and require public disclosure of the use of those funds.

2.   Campaign funds raised by candidates and Members of Congress are largely restricted to supporting the candidate's election (or re-election) efforts and duties in office and cannot be used for their own or their family's personal use or enjoyment.  This restriction helps prevent donors from exercising undue influence over candidates and federal officeholders, and also protects donors from the misuse of their campaign donations by candidates.

3.   The prohibition against personal use of campaign funds prohibits the disbursement of campaign funds for any expense that would exist irrespective of a candidate's election campaign or duties as a holder of federal office.  Among other such personal expenses, candidates and Members of Congress are explicitly prohibited from spending campaign funds on clothing, vacations, household food items, school tuition, utilities, payments to recreational facilities, and entertainment not associated with the election campaign.

4.   Federal law also requires regular disclosure of the receipt and disbursement of campaign funds.  Specifically, candidates for election (or re-election) to the U.S. House of Representatives must periodically file public reports with the Federal Election Commission ("FEC") that disclose, among other things, the total amount of their disbursements, as well as the recipient and purpose of any expenditure totaling more than $200 (in aggregate) during any two-year election cycle.  These reports provide citizens with a record of the expenditure of campaign funds, provide donors with a measure of accountability with regard to the use of funds, and assist voters in making informed decisions at the polls.

5.    The FEC is an independent regulatory agency of the United States whose purpose is to enforce campaign finance laws in United States federal elections.  Among other things, the FEC -- along with the Federal Bureau of Investigation ("FBI"), an agency of the United States -- is responsible for investigating the potential improper use of campaign funds by candidates for elected office and Members of Congress.

B.    THE OMAR NAVARRO FOR CONGRESS CAMPAIGN COMMITTEE

6.    On or about November 18, 2015, defendant OMAR NAVARRO filed an amended Statement of Candidacy (FEC Form 2) to declare his intent to run in the 2016 election for the 43rd Congressional District of the United States House of Representatives (the "43rd District").

7.    The 43rd District was located entirely within Los Angeles County within the Central District of California.  The boundaries of the 43rd District were revised in 2020 but remained entirely within Los Angeles County within the Central District of California.

8.    On or about November 18, 2015, defendant NAVARRO filed a Statement of Organization (FEC Form 1) designating the "Omar Navarro for Congress" campaign committee (the "Campaign") to fund his campaign.

9.    Defendant NAVARRO campaigned to represent the 43rd District and was on California's nonpartisan primary ballot in the 2016 election, which took place on June 7, 2016.  Defendant NAVARRO advanced to the general election by default, which took place on November 8, 2016, and lost to the incumbent.

10.   According to the FEC, for the two-year 2016 election cycle, through and including December 31, 2016, the Campaign reported total receipts of $2,846 and total disbursements of $3,196.12.

11.  On or about January 29, 2017, defendant NAVARRO filed an amended Statement of Organization designating defendant NAVARRO as Campaign Treasurer.  Defendant NAVARRO has remained the Campaign Treasurer on all FEC filings since then.

12.  On or about April 5, 2017, defendant NAVARRO filed his Statement of Candidacy (FEC Form 2) declaring his candidacy for the 43rd District in the 2018 election.

13.  Defendant NAVARRO was on the primary ballot in the 2018 election, which took place on June 5, 2018, and advanced to the general election after receiving the second most votes.  Defendant NAVARRO lost to the incumbent in the 2018 general election on November 6, 2018.

14.  According to the FEC, for the two-year 2018 election cycle, through and including December 31, 2018, the Campaign reported total receipts of $1,173,123.55 and total disbursements of $1,045,289.50.

15.  On or about November 13, 2018, defendant NAVARRO immediately declared his candidacy for the 43rd District in the 2020 election.

16.  Between on or about December 12, 2019, and until on or about June 25, 2020, defendant NAVARRO was in custody in San Francisco, California, in connection with criminal charges brought against him by the State of California alleging stalking in violation of a protective order, making terroristic threats, and violating a civil restraining order, among others.  After entering a plea, defendant NAVARRO was found guilty of one felony count of stalking, in violation of California Penal Code Section 646.6(B), and one misdemeanor count of making criminal threats, in violation of California Penal Code Section 422.  Defendant NAVARRO retained

Attorney A and Attorney B to perform legal services in connection with these criminal matters.

17.   While still in custody, defendant NAVARRO was on the primary ballot in the 2020 election, which took place on March 3, 2020.  Defendant NAVARRO finished third in the primary election and thus was not on the ballot for the general election in 2020.

18.   According to the FEC, for the two-year 2020 election cycle, through and including December 31, 2020, the Campaign reported total receipts of $731,118.13 and total disbursements of $856,195.98.

19.   After his release from custody, on or about July 1, 2020, defendant NAVARRO declared his candidacy for the 43rd District in the 2022 election.

20.   Defendant NAVARRO was on the primary ballot in the 2022 election for the 43rd District, which took place on June 7, 2022, and advanced to the general election after receiving the second most votes.  Defendant NAVARRO lost to the incumbent in the 2022 general election on November 8, 2022.

21.   According to the FEC, for the two-year 2022 election cycle, through and including December 31, 2022, the Campaign reported total receipts of $85,997.53 and total disbursements of $88,751.81.

22.   On or about April 2, 2023, defendant NAVARRO caused to be filed a Termination Report for the Campaign, which was approved by the FEC on or about April 6, 2023.

23.   Defendant NAVARRO exercised authority and control over the hiring of staff or recruiting of volunteers for his Campaign as well as the expenditure of funds on the Campaign's behalf, including through Campaign debit cards, credit cards, checks, and reimbursements, and the submission of Campaign reports to the FEC.

C.    ADDITIONAL DEFENDANTS

24.    Defendant DORA ASGHARI was defendant NAVARRO's mother.
Defendant ASGHARI would receive checks from the Campaign purportedly
for work on the Campaign, with such work and payments being reported
to the FEC.  At defendant NAVARRO's direction, defendant ASGHARI
would repeatedly cash those checks and/or deposit those checks and
withdraw cash and then give at least a portion of the cash to
defendant NAVARRO.  Defendant ASGHARI had a personal checking account
with U.S. Bank, N.A. and no bank account with Wells Fargo, N.A.

25.    Defendant ZACHARIAS DIAMANTIDES-ABEL was a friend and
associate of defendant NAVARRO.  Defendant ABEL would receive checks
from the Campaign purportedly for work on the Campaign, with such
work and payments being reported to the FEC.  At defendant NAVARRO's
direction, defendant ABEL would repeatedly cash those checks and then
give at least a portion of the cash to defendant NAVARRO.  Defendant
ABEL had a Wells Fargo personal checking account.

D.    OTHER INDIVIDUALS AND ENTITIES

26.    Individual A was an associate of defendant NAVARRO who
received checks from the Campaign purportedly for work on the
Campaign, when in fact Individual A had not performed the described
work for the Campaign.  Defendant NAVARRO reported to the FEC that
the payments to Individual A were for work on the Campaign.  Instead,
at defendant NAVARRO's direction, Individual A would cash those
checks and then give the cash to defendant NAVARRO.  Individual A had
a personal checking account with Southland Credit Union and no bank
account with Wells Fargo.

27.    Individual B was an associate of defendant NAVARRO who
received checks from the Campaign purportedly for work on the

Campaign, when in fact Individual B had not performed the described work for the Campaign.  Defendant NAVARRO reported to the FEC that the payments to Individual B were for work on the Campaign.  Instead, at defendant NAVARRO's direction, Individual B would cash those checks and then give the cash to defendant NAVARRO.  Individual B had a personal checking account with Union Bank and no bank account with Wells Fargo.

28.  Individual C performed bookkeeping services for the Campaign from on or about September 5, 2017, until on or about January 31, 2020.  At defendant NAVARRO's direction, Individual C would enter transactions from the Campaign into an FEC compliance software program.  Defendant NAVARRO directed Individual C to file the Campaign's FEC reports based on the information defendant NAVARRO provided, which were electronically signed by defendant NAVARRO as Campaign Treasurer.

29.  Individual D was in a romantic relationship with defendant NAVARRO from approximately January 2019 until she attempted to end the relationship in approximately April 2019.  Individual D applied for a restraining order on or about July 10, 2019, which was granted. As described above, defendant NAVARRO was arrested on or about December 8, 2019, and criminally charged with stalking Individual D in violation of a protective order, making terroristic threats, and violating a civil restraining order.  After entering a plea, defendant NAVARRO was found guilty of one felony count of stalking, in violation of California Penal Code Section 646.6(B), and one misdemeanor count of making criminal threats, in violation of California Penal Code Section 422.  Defendant NAVARRO was sentenced to time served and released from custody on or about June 25, 2020.

30.   Individual E was a friend and associate of defendant NAVARRO who received checks from the Campaign purportedly for work on the Campaign.  Defendant NAVARRO approached Individual E about cashing a check from the Campaign and giving a portion of the cash to defendant NAVARRO, which Individual E declined to do.

31.   Individual F was the Campaign's Treasurer from on or about March 31, 2016, to on or about January 29, 2017.

32.   Individual G performed bookkeeping services for the Campaign from in or around February 2020 through in or around January 2021.  At defendants NAVARRO and ASGHARI's direction, Individual G would enter transactions from the Campaign into an FEC compliance software program.  Defendant NAVARRO directed Individual G to file his Campaign's FEC reports based on the information provided by defendant NAVARRO, which were electronically signed by defendant NAVARRO as Campaign Treasurer.

33.   Individual H was defendant NAVARRO's wife between on or about May 10, 2014, and on or about July 10, 2019.  Defendant NAVARRO and Individual H shared several personal bank accounts during their marriage as described further below.

34.   The United Latino Foundation was purportedly a charitable organization located in Torrance, California, that was founded and controlled by defendant NAVARRO in or around February 2019. Defendant NAVARRO filed for a fictitious business name record for "United Latino Foundation" with the Los Angeles County Registrar-Recorder on or about March 14, 2019.  Defendant NAVARRO has not made any filings that would establish the United Latino Foundation as a nonprofit organization with either the Internal Revenue Service ("IRS") or State of California.

35.   ON Strategic Marketing was a consulting company founded and controlled by defendant NAVARRO in or around March 2019.   Defendant NAVARRO filed for a fictitious business name record for "ON Strategic Marketing" with the Los Angeles County Registrar-Recorder on or about March 26, 2019.   ON Strategic Marketing had no publicly available internet or social media presence, no publicly available employees or clients, and no publicly available sources of income or reasons for expenditures.

36.   Brava Consulting was a consulting company founded and controlled by defendant ASGHARI in or around March 2019.   Defendant ASGHARI filed for a fictitious business name record for "Brava Consulting" with the Los Angeles County Registrar-Recorder on or about March 26, 2019.   Brava Consulting had no publicly available internet or social media presence, no publicly available employees or clients, and no publicly available sources of income or reasons for expenditures.

E.   FINANCIAL BACKGROUND

37.   On or about October 29, 2016, Individual F, who was then the Campaign's Treasurer, opened a checking account ending in 2127 at Wells Fargo in the name of the Campaign (the "Campaign Account").   The Campaign Account was opened with a deposit of $454.   Defendant NAVARRO was added as a signatory on or about January 26, 2017, at which time Individual F was removed as a signatory.   Around this same time, defendant NAVARRO became his own Treasurer and Individual F was removed from that role.

38.   On or about September 5, 2017, defendant NAVARRO added Individual C as a signatory to the Campaign Account.   Individual C was given access to Campaign checks for the account, which Individual

C would write at defendant NAVARRO's direction, as well as a debit card, which Individual C would only use at defendant NAVARRO's direction.

39.  On or about December 11, 2019, defendant NAVARRO added his mother, defendant ASGHARI, as a signatory to the Campaign Account. Defendant ASGHARI was given access to checks for the Campaign Account, which she would write at defendant NAVARRO's direction, and a debit card, which she would use only at defendant NAVARRO's direction.

40.  On or about March 29, 2019, defendant ASGHARI opened a business checking account ending in 8921 at U.S. Bank in the name of Brava Consulting (the "Brava Account").  Defendant ASGHARI was the sole controller and signatory for the Brava Account.

41.  On or about May 7, 2019, defendant NAVARRO opened a business checking account ending in 8575 at Wells Fargo in the name of ON Strategic Marketing (the "ON Strategic Marketing Account"). Defendant NAVARRO was the sole controller and signatory for the ON Strategic Marketing Account.

42.  On or about February 19, 2019, defendant NAVARRO opened a business checking account ending in 9015 at Wells Fargo in the name of United Latino Foundation (the "United Latino Foundation Account"). Defendant NAVARRO was the sole controller and signatory for the United Latino Foundation Account.

43.  Defendant NAVARRO maintained the following bank accounts with Wells Fargo (collectively, the "Personal Accounts"):

        a.    A checking account ending in 5382 in the name of "Omar Navarro" ("Personal Account #1").  This account was opened on September 11, 2017, by defendant NAVARRO's then-wife, Individual H,

1  who added defendant NAVARRO as a joint owner to the account on June

2  8, 2018.  Defendant NAVARRO took sole ownership of the account on

3  January 10, 2019, by removing Individual H from the account.

4          b.  A checking account ending in 2239 in the name of "Omar

5  Navarro" and for which defendant NAVARRO was the sole signatory

6  ("Personal Account #2").  This account was opened on or about

7  September 12, 2017.

8          c.  A savings account ending in 0904 in the name of "Omar

9  Navarro" and for which defendant NAVARRO was the sole signatory (the

10  "Savings Account").  This account was opened on or about November 19,

11  2018.

12      44.  On or about May 11, 2015, defendant NAVARRO and his then-

13  wife Individual H filed for bankruptcy.  The petition, which

14  defendant NAVARRO signed under penalty of perjury, stated that

15  defendant NAVARRO and Individual H had $30,231 in total assets

16  comprised primarily of a car, personal property, and an expected 2014

17  tax refund of $2,500.  Defendant NAVARRO and Individual H reported

18  total cash assets of $468 in a joint checking account.  The petition

19  reported $95,060 in total liabilities comprised primarily of credit

20  card debt, an automobile loan, and approximately $49,000 in student

21  loans.  Defendant NAVARRO indicated that he was "not employed" at the

22  time of filing.  Defendant NAVARRO stated that his year-to-date gross

23  income was $1,152 and attached a $1,152 paystub he received from a

24  debt counseling company for 96 hours of work performed over a two-

25  week period in March and April 2015.  Defendant NAVARRO also

26  indicated that he received approximately $250 monthly in the form of

27  "help from parents."  Individual H reported year-to-date income as

28

$5,958.66 through Individual H's employment as a dance instructor and a retail cashier.

45.  The bankruptcy court entered an order of discharge for both defendant NAVARRO and Individual H on August 24, 2015.

46.  From on or about January 1, 2018, through on or about July 1, 2020, even though defendant NAVARRO had no source of outside employment or income, defendant NAVARRO made or caused to be made approximately $117,313.79 in cash deposits into the Personal Accounts.  On the days preceding a cash deposit, defendant NAVARRO's account balance typically was below $100.

47.  From on or about January 1, 2018, through on or about July 1, 2020, defendant NAVARRO amassed over $1,000 in fees on his Personal Accounts and personal credit cards for late payments on credit cards, overdraft and insufficient fund fees, low balance monthly service fees, cash advance fees, and account balance inquiries.

48.  These Introductory Allegations are incorporated by reference into each count of this First Superseding Indictment.

1

COUNT ONE

2

[18 U.S.C. § 371]

3

[ALL DEFENDANTS]

4 A.   OBJECTS OF THE CONSPIRACY

5        49.  Beginning on a date unknown and continuing through on or

6 about January 31, 2021, in Los Angeles County, within the Central

7 District of California, and elsewhere, defendants OMAR NAVARRO, DORA

8 ASGHARI, and ZACHARIAS DIAMANTIDES-ABEL ("ABEL"), together with

9 others known and unknown to the Grand Jury, conspired and agreed with

10 each other to knowingly, willfully, and intentionally commit offenses

11 against the United States, namely, prohibited use of campaign

12 contributions, in violation of Title 52, United States Code, Sections

13 30109(d) and 30114(b), wire fraud, in violation of Title 18, United

14 States Code, Section 1343, and falsification of records, in violation

15 of Title 18, United States Code, Section 1519, and to knowingly

16 defraud the United States by impairing, obstructing, and defeating

17 the lawful functions of a department or agency of the United States;

18 to wit, the FEC's ability to administer federal regulations

19 concerning source and dollar restrictions in federal elections.

20 B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

21      ACCOMPLISHED

22        50.  The objects of the conspiracy were to be accomplished, in

23 substance, as follows:

24             a.   Defendant NAVARRO would illegally convert and steal

25 Campaign funds to purchase goods and services for his personal use

26 and enjoyment.

27             b.   To fund his lavish lifestyle, defendant NAVARRO also

28 would illegally transfer cash to himself by making payments from his

Campaign to various individuals, including defendants ABEL and ASGHARI, whom he then would direct to transfer the cash back to defendant NAVARRO for his personal use and enjoyment, including luxury expenses.

c.   Defendant NAVARRO would facilitate his theft of Campaign funds by writing checks, or causing checks to be written, to individuals purportedly for work on the Campaign, including defendants ABEL and ASGHARI, so that those individuals could provide cash back to defendant NAVARRO.  Defendant NAVARRO would represent, or cause to be represented, on those checks, and thus subsequently to the FEC, that such individuals, and not defendant NAVARRO, had received payment from the Campaign for their services.

d.   Defendants ABEL and ASGHARI would further conceal the misdirection of Campaign funds by frequently cashing the checks rather than depositing the checks directly into their personal accounts, or if a check was deposited, quickly making a cash withdrawal shortly thereafter.  In total, between December 2017 and June 2020, defendant ABEL purportedly earned $49,260 from the Campaign, and defendant ASGHARI purportedly earned $39,650 from the Campaign, according to checks defendant NAVARRO wrote or caused to be written to defendants ABEL and ASGHARI from the Campaign Account.

e.   Defendants NAVARRO and ASGHARI would also form sham companies to further conceal the flow of funds from the Campaign to defendants NAVARRO and ASGHARI.  Specifically, defendant ASGHARI created Brava Consulting, which received $18,975.15 from the Campaign from March 2019 and June 2020, according to checks defendant NAVARRO wrote or caused to be written to Brava Consulting.  Defendant NAVARRO formed ON Strategic Marketing and the United Latino Foundation, which

would receive funds from defendant ASGHARI, defendant ASGHARI's company, Brava Consulting, or the Campaign directly, but which would ultimately be spent or withdrawn as cash by defendant NAVARRO.

f.    Defendant NAVARRO would conceal and disguise the personal nature of many of his expenditures of Campaign funds by falsely stating in the memo lines of the checks he provided to Individual C and Individual G a purported Campaign-related purpose for the expenditures, which defendant NAVARRO then caused to be submitted to the FEC as an official explanation for the expenditure of Campaign funds.

C.    OVERT ACTS

51.    In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants NAVARRO, ASGHARI, and ABEL, and others known and unknown, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On September 22, 2017, Individual B cashed check 1019 for $1,250 from the Campaign Account, which defendant NAVARRO had written and included "video editing" on the memo line of the check.

Overt Act No. 2:    On September 22, 2017, defendant NAVARRO made two cash deposits of $830 and $100, respectively, into Personal Account #2.

Overt Act No. 3:    On December 12, 2017, defendant NAVARRO texted Individual B asking if Individual B wanted "to make $100 bucks," and the two then texted to coordinate plans to meet.

Overt Act No. 4:    On December 13, 2017, Individual B deposited and/or cashed check 1137 for $700 from the Campaign Account, which

defendant NAVARRO had written and included "video editing/website" on the memo line of the check.

Overt Act No. 5:    On December 15, 2017, defendant NAVARRO texted Individual B, "can you send me the $400?"  Individual B instructed defendant NAVARRO to make a Venmo account.

Overt Act No. 6:    On December 16, 2017, Individual B transferred $400 to defendant NAVARRO's Venmo account, which defendant NAVARRO then transferred to Personal Account #2.

Overt Act No. 7:    On January 2, 2018, defendant NAVARRO texted defendant ABEL, "[w]ant to make some money reach out."

Overt Act No. 8:    On January 2, 2018, at approximately 11:27 p.m., defendant ABEL deposited check 1146 for $1,000 from the Campaign Account at a Wells Fargo ATM on Hawthorne Boulevard in Torrance, California ("Hawthorne ATM"), which defendant NAVARRO had written and included "office work/phone calls" on the memo line of the check.

Overt Act No. 9:    On January 2, 2018, at approximately 11:34 p.m., defendant ABEL withdrew $300 cash from the Hawthorne ATM, and at approximately 11:37 p.m., defendant NAVARRO deposited $310 cash into Personal Account #2 at the Hawthorne ATM.

Overt Act No. 10:    On January 3, 2018, shortly after midnight at approximately 12:18 a.m., defendant ABEL withdrew another $300 cash at the Hawthorne ATM, and at approximately 1:19 a.m., defendant NAVARRO made another cash deposit of $300 into Personal Account #2 at the Hawthorne ATM.

Overt Act No. 11:    On January 22, 2018, defendant ABEL cashed check 1148 for $1,540 from the Campaign Account, which defendant

1  NAVARRO had written and included "signature
2  gathering/walking/assisting" on the memo line of the check.
3      Overt Act No. 12:    On January 23, 2018, defendant NAVARRO
4  deposited $900 cash into Personal Account #2.
5      Overt Act No. 13:    On March 26, 2018, defendant NAVARRO texted
6  defendant ABEL, "[w]ant to get paid today," and in subsequent
7  messages defendants NAVARRO and ABEL coordinated meeting up.
8      Overt Act No. 14:    On March 26, 2018, defendant ABEL cashed
9  check 1052 for $1,120 from the Campaign Account, which defendant
10 NAVARRO had written and included "walking" on the memo line of the
11 check.
12     Overt Act No. 15:    On March 27, 2018, defendant NAVARRO made
13 two cash deposits of $908 and $101, respectively, into Personal
14 Account #2.
15     Overt Act No. 16:    On April 26, 2018, defendant ABEL cashed
16 check 1065 for $1,500 from the Campaign Account, which defendant
17 NAVARRO had written and included "assistant" on the memo line of the
18 check.
19     Overt Act No. 17:    On April 26, 2018, defendant NAVARRO made
20 two cash deposits of $1,200 and $105, respectively, into Personal
21 Account #2.
22     Overt Act No. 18:    On April 30, 2018, defendant ABEL cashed
23 check 1054 for $3,500 from the Campaign Account, which defendant
24 NAVARRO had written and included "mailer/walking/printing" on the
25 memo line of the check.
26     Overt Act No. 19:    On May 1, 2018, defendant NAVARRO deposited
27 $3,000 cash into Personal Account #2.
28

    Overt Act No. 20:    On June 26, 2018, defendant ABEL cashed check 1096 for $2,200 from the Campaign Account, which defendant NAVARRO had written and included "assistant" on the memo line of the check.

    Overt Act No. 21:    On June 26, 2018, defendant NAVARRO deposited or caused to be deposited $1,200 cash into Personal Account #1.

    Overt Act No. 22:    On June 29, 2018, defendant NAVARRO wrote a check for $1,000 from the Campaign Account to Individual E and directed Individual E to cash the check and give $700 cash to defendant NAVARRO.    Individual E refused.

    Overt Act No. 23:    On July 24, 2018, defendant ASGHARI deposited and/or cashed check 1087 for $6,000 from the Campaign Account, which defendant NAVARRO had written and included "sign put up and take down and events coordinator" on the memo line of the check.

    Overt Act No. 24:    On July 26, 2018, defendant NAVARRO deposited or caused to be deposited $1,720 cash into Personal Account #1 and deposited an additional $200 cash into Personal Account #1.

    Overt Act No. 25:    On August 1, 2018, defendant ABEL deposited check 1077 for $1,850 from the Campaign Account, which defendant NAVARRO had written and included "assistant" on the memo line of the check, and in doing so deposited $500 into defendant ABEL's own account and withdrew $1,350 cash.

    Overt Act No. 26:    On August 1, 2018, defendant NAVARRO deposited $4,048.79 into Personal Account #2.

    Overt Act No. 27:    On August 2, 2018, defendant ABEL cashed check 1079 for $3,150 from the Campaign Account, which defendant

NAVARRO had written and included "$1850 Additional to bonus" on the memo line of the check.

Overt Act No. 28:   On November 7, 2018, defendant ASGHARI cashed check 1072 for $3,000 from the Campaign Account, which defendant NAVARRO had written and included "coordinating" on the memo line of the check.

Overt Act No. 29:   On November 9, 2018, defendant NAVARRO deposited $1,500 cash into Personal Account #1.

Overt Act No. 30:   On November 19, 2018, defendant NAVARRO made two cash deposits of $2,280 and $800, respectively, into Personal Account #1.  Defendant NAVARRO also deposited $800 cash into his Savings Account.

Overt Act No. 31:   On November 20, 2018, defendant NAVARRO deposited $5,000 cash into his Savings Account.

Overt Act No. 32:   On November 23, 2018, defendant NAVARRO made two cash deposits of $500 and $2,000 into Personal Account #1 and his Savings Account, respectively.

Overt Act No. 33:   On December 2, 2018, defendant NAVARRO spent $270 in Campaign funds to purchase a gift card from Target, which he later used to purchase personal items, including two Nintendo Switch games, toilet paper, and groceries.

Overt Act No. 34:   On December 3, 2018, defendant NAVARRO deposited $4,000 into Personal Account #1.

Overt Act No. 35:   On December 31, 2018, defendant NAVARRO spent $586.38 from Campaign funds for a personal social party at the Hermosa Beach House.

Overt Act No. 36:   Between January 6, 2019, and January 8, 2019, defendant NAVARRO spent $2,630.12 from Campaign funds for a

personal trip for himself and Individual D at the Bellagio Hotel in Las Vegas, Nevada.

Overt Act No. 37:  On February 14, 2019, defendant NAVARRO spent $219.99 from Campaign funds for a personal dinner with his then-girlfriend Individual D at Carmine's in Washington, D.C.

Overt Act No. 38:  On February 19, 2019, defendant NAVARRO opened the United Latino Foundation Account, a business checking account, at a Wells Fargo bank in Alexandria, Virginia.

Overt Act No. 39:  On February 19, 2019, defendant NAVARRO wrote check 1003 from the Campaign Account to the United Latino Foundation for $3,000 and deposited it into the United Latino Foundation Account at a Wells Fargo bank in Alexandria, Virginia.

Overt Act No. 40:  On February 25, 2019, defendant NAVARRO withdrew $1,500 cash from the United Latino Foundation Account at a Wells Fargo bank in Alexandria, Virginia, and deposited $1,000 cash into Personal Account #1.

Overt Act No. 41:  On March 1, 2019, defendant NAVARRO made two cash deposits of $4,300 and $500 into Personal Account #1 and his Savings Account, respectively, at a Wells Fargo bank in Washington, D.C.

Overt Act No. 42:  On March 8, 2019, defendant NAVARRO withdrew $203 cash at an ATM from the United Latino Foundation Account.

Overt Act No. 43:  On March 14, 2019, defendant NAVARRO filed for a fictitious business name record for "United Latino Foundation" with the Los Angeles County Registrar-Recorder.

Overt Act No. 44:  On March 16, 2019, defendant NAVARRO spent $418.74 from Campaign funds for a personal vacation with his then-

girlfriend Individual D and a relative at the Ponte Vineyard Inn in Temecula, California.

Overt Act No. 45:  On March 26, 2019, defendant NAVARRO filed for a fictitious business name record for "ON Strategic Marketing" with the Los Angeles County Registrar-Recorder.

Overt Act No. 46:  On March 26, 2019, defendant ASGHARI filed for a fictitious business name record for "Brava Consulting" with the Los Angeles County Registrar-Recorder.

Overt Act No. 47:  On March 29, 2019, defendant ASGHARI opened the Brava Account, a business checking account, at U.S. Bank.

Overt Act No. 48:  On March 29, 2019, defendant ASGHARI deposited check 1007 for $3,200 from the Campaign Account into the Brava Account, which defendant NAVARRO had written and included "consulting" on the memo line of the check.

Overt Act No. 49:  On April 1, 2019, defendant NAVARRO and Individual A went to a Wells Fargo bank on Crenshaw Boulevard in Torrance, California, and Individual A cashed check 1006 for $4,000 from the Campaign Account, which defendant NAVARRO had written and included "assistant" on the memo line of the check.  At defendant NAVARRO's direction, Individual A gave the $4,000 cash to defendant NAVARRO.

Overt Act No. 50:  On April 1, 2019, defendant NAVARRO deposited $3,000 cash at a Wells Fargo bank on Crenshaw Boulevard in Torrance, California, into Personal Account #1.

Overt Act No. 51:  On April 5, 2019, via text message, defendant NAVARRO advised Individual C, who was preparing an FEC filing on behalf of defendant NAVARRO, that Individual A was an "assistant" for the Campaign.  Individual C responded that defendant

NAVARRO needed to be more specific and suggested the description "Field Director," to which defendant NAVARRO replied, "yes."

Overt Act No. 52:   Between April 10, 2019, and April 12, 2019, defendant NAVARRO spent approximately $787.72 from Campaign funds for a personal trip with his then-girlfriend Individual D to Las Vegas, California, including purchases at the Eiffel Tower Restaurant for $511.43, the MGM Grand for $251.37, and P.F. Chang's for $24.92.

Overt Act No. 53:   On April 22, 2019, defendant NAVARRO withdrew $1,200 cash from the United Latino Foundation Account.

Overt Act No. 54:   On April 22, 2019, and April 23, 2019, defendant NAVARRO made two cash deposits of $500 and $300, respectively, into his Savings Account.

Overt Act No. 55:   On April 24, 2019, defendant NAVARRO and Individual A went to a Wells Fargo bank, and Individual A cashed check 1021 for $3,000 from the Campaign Account, which defendant NAVARRO had written and included "website modifaction [sic]" on the memo line of the check.  At defendant NAVARRO's direction, Individual A gave the $3,000 cash to defendant NAVARRO.

Overt Act No. 56:   On April 26, 2019, defendant ASGHARI deposited check 1009 for $3,000 from the Campaign Account into the Brava Account, which defendant NAVARRO had written and included "direct mail postcards" on the memo line of the check.

Overt Act No. 57:   On April 30, 2019, defendant ABEL cashed check 1016 for $3,000 from the Campaign Account, which defendant NAVARRO had written and included "assistant/3/14 4/14" on the memo line of the check.

Overt Act No. 58:   On May 1, 2019, defendant NAVARRO made two cash deposits of $300 and $2,000 into his Savings Account and

Personal Account #1, respectively, at a Wells Fargo bank in Torrance, California.

Overt Act No. 59:    On May 7, 2019, defendant NAVARRO opened the ON Strategic Marketing Account, a business checking account, at Wells Fargo, falsely claiming to have annual gross sales of $48,000.

Overt Act No. 60:    On May 10, 2019, defendant ASGHARI issued check 1001 from the Brava U.S. Bank Account to ON Strategic Marketing for $1,200 with "marketing" on the memo line, which defendant NAVARRO then deposited into the ON Strategic Marketing Account the same day.

Overt Act No. 61:    On May 13, 2019, defendant NAVARRO withdrew $300 cash from the ON Strategic Marketing Account at an ATM in Washington, D.C.

Overt Act No. 62:    On May 14, 2019, defendant NAVARRO made two cash withdrawals at ATMs in Las Vegas, Nevada, of $207.99 and $307.99, respectively, from the ON Strategic Marketing Account.

Overt Act No. 63:    On May 14, 2019, defendant NAVARRO withdrew $300 cash at a Wells Fargo bank from the ON Strategic Marketing Account at an ATM in Las Vegas, Nevada.

Overt Act No. 64:    On May 14, 2019, defendant NAVARRO deposited $300 cash into Personal Account #1.

Overt Act No. 65:    On May 15, 2019, defendant ABEL cashed check 1023 for $2,500 from the Campaign Account, which defendant NAVARRO had written and included "assistant" on the memo line of the check.

Overt Act No. 66:    On May 15, 2019, defendant NAVARRO deposited $1,500 cash at an ATM in Las Vegas, Nevada, into Personal Account #1.

Overt Act No. 67:    On May 15, 2019, defendant NAVARRO withdrew $147.99 at an ATM in Las Vegas, Nevada, from the United Latino Foundation Account.

<u>Overt Act No. 68:</u>   On May 22, 2019, defendant NAVARRO and Individual A went to a Wells Fargo bank, and Individual A cashed check 1017 for $2,000 from the Campaign Account, which defendant NAVARRO had written and included "literature distribution" on the memo line of the check.  At defendant NAVARRO's direction, Individual A then gave $2,000 cash to defendant NAVARRO.

<u>Overt Act No. 69:</u>   On May 23, 2019, defendant NAVARRO deposited $1,206 cash into Personal Account #1.

<u>Overt Act No. 70:</u>   On June 3, 2019, defendant ASGHARI deposited check 1022 for $2,000 from the Campaign Account into the Brava Account, which defendant NAVARRO had written and included "2nd mailing" in the memo line of the check.

<u>Overt Act No. 71:</u>   On June 4, 2019, defendant NAVARRO deposited check 1002 for $1,100 from the Brava Account into the ON Strategic Marketing Account, which defendant ASGHARI had written and included "marketing" on the memo line.

<u>Overt Act No. 72:</u>   On June 5, 2019, defendant NAVARRO transferred $1,000 from the ON Strategic Marketing Account to Personal Account #1.

<u>Overt Act No. 73:</u>   On June 5, 2019, defendant NAVARRO and Individual A went to a Wells Fargo bank, and Individual A cashed check 3002 for $2,500 from the Campaign Account, which defendant NAVARRO had written with no description on the memo line of the check.  At defendant NAVARRO's direction, Individual A then gave $2,500 cash to defendant NAVARRO.

<u>Overt Act No. 74:</u>   On June 10, 2019, defendant NAVARRO wrote check 1003 for $2,000 from the Campaign Account to the United Latino

Foundation, which he deposited into the United Latino Foundation Account the same day.

Overt Act No. 75:    On June 10, 2019, defendant NAVARRO withdrew $2,000 cash from the United Latino Foundation Account.

Overt Act No. 76:    On June 10, 2019, defendant NAVARRO deposited $700 cash into Personal Account #1.

Overt Act No. 77:    On June 10, 2019, defendant NAVARRO withdrew $100 cash from the ON Strategic Marketing Account.

Overt Act No. 78:    On June 14, 2019, defendant NAVARRO deposited $2,700 cash into Personal Account #1.

Overt Act No. 79:    On June 21, 2019, defendant NAVARRO withdrew $300 cash from the United Latino Foundation Account.

Overt Act No. 80:    On June 26, 2019, defendant ABEL cashed check 1020 for $2,000 from the Campaign account, which defendant NAVARRO had written and included "signature gatherer" on the memo line of the check.

Overt Act No. 81:    On June 26, 2019, defendant NAVARRO spent $750 from Campaign Funds to pay a private investigator ("Private Investigator") hired by defendant NAVARRO to surveil his ex-girlfriend, Individual D.

Overt Act No. 82:    On June 27, 2019, defendant NAVARRO deposited $2,701 cash into Personal Account #1.

Overt Act No. 83:    On June 30, 2019, when Individual C asked defendant NAVARRO via text message, "[w]hat was the $750 to [the Private Investigator]," defendant NAVARRO responded, "[l]ooking into some info on [Public Official A] between you and me," to which Individual C responded, "[o]k I'll call it opposition research."

Overt Act No. 84:  On July 15 and July 16, 2019, Individual C texted defendant NAVARRO asking, "[w]hat's Brava consulting?  Do you know where they are located?" to which defendant NAVARRO replied, "[y]es.  Let me get the address" and "social media promotion."

Overt Act No. 85:  On July 25, 2019, defendant ASGHARI texted defendant NAVARRO, "Hi hijo please remember that tomorrow I need that thing. Please," to which defendant NAVARRO responded, "[o]k" and defendant ASGHARI added "I love you hijo, if you need it I can give it back to you in two weeks."

Overt Act No. 86:  On July 26, 2019, defendant ASGHARI deposited check 2503 for $1,200 from the Campaign Account into her U.S. Bank account, which defendant NAVARRO had written and included no description on the memo line of the check.

Overt Act No. 87:  On July 26, 2019, defendant ABEL texted defendant NAVARRO, "[t]here's people messaging me threatening me. You need to pay those taxes like we talked about right away to cover both our assess.  It can't wait," to which NAVARRO replied, "Call me," and "Don't text me."

Overt Act No. 88:  On July 27, 2019, defendant NAVARRO texted defendant ABEL, "I'll pay you if you help me do some stuff goths . . . Today . . . Can you send me the screen shots from [a former Campaign staffer] . . . Need them for court."  Defendant ABEL replied, "I'm down but cash only now.  No more checks."

Overt Act No. 89:  Between August 6, 2019, and September 12, 2019, defendant NAVARRO spent $3,300 from Campaign funds to pay Attorney A, who represented defendant NAVARRO in connection with a restraining order that had been filed against defendant NAVARRO by Individual D.

1        Overt Act No. 90:    On August 30, 2019, defendant ASGHARI texted

2    defendant NAVARRO to "[j]ust bring the thing so I can go tomorrow

3    very early to the place I don't want to be late for my responsibility

4    of the first," to which defendant NAVARRO responded, "ok."

5        Overt Act No. 91:    On September 3, 2019, defendant ASGHARI

6    cashed check 1003 for $2,400 from the Campaign Account, which

7    defendant NAVARRO had written and included no memo line on the check.

8        Overt Act No. 92:    On September 20, 2019, Individual B cashed

9    check 1253 for $1,100 cash from the Campaign Account, which defendant

10   NAVARRO had written and included "paid walking" on the memo line of

11   the check.

12       Overt Act No. 93:    On September 20, 2019, defendant NAVARRO

13   deposited $400 cash into Personal Account #1.

14       Overt Act No. 94:    On September 30, 2019, defendant NAVARRO

15   spent $1,000 from Campaign Funds to pay the Private Investigator to

16   surveil his ex-girlfriend, Individual D.

17       Overt Act No. 95:    On October 22, 2019, Individual B cashed

18   check 1202 for $1,200 from the Campaign Account, which defendant

19   NAVARRO had written and included no description in the memo line of

20   the check.

21       Overt Act No. 96:    On October 22, 2019, defendant NAVARRO

22   deposited $750 cash into Personal Account #1.

23       Overt Act No. 97:    On November 18, 2019, defendant ASGHARI

24   cashed check 1263 for $2,500 from the Campaign Account, which

25   defendant NAVARRO had written and included no description in the memo

26   line of the check.

27

28

<u>Overt Act No. 98:</u>  On November 19, 2019, defendant NAVARRO made three cash deposits of $60, $580, and $1,700, respectively, into Personal Account #1.

<u>Overt Act No. 99:</u>  On December 3, 2019, defendant ASGHARI cashed check 1204 for $3,000 from the Campaign Account, which defendant NAVARRO had written and included no description on the memo line of the check.

<u>Overt Act No. 100:</u>  On December 4, 2019, defendant NAVARRO made two cash deposits of $1,600 and $500, respectively, into Personal Account #1.

<u>Overt Act No. 101:</u>  On December 10, 2019, defendant NAVARRO spent $257.98 from Campaign funds for a Southwest Airlines ticket for Attorney A to travel to San Francisco, and $219.30 from Campaign funds for an American Airlines flight for Attorney A to travel back to Los Angeles, in connection with defendant NAVARRO's criminal stalking case.

<u>Overt Act No. 102:</u>  On December 11, 2019, defendant ASGHARI deposited check 1206 for $2,500 from the Campaign Account into the Asghari U.S. Bank Account, which defendant NAVARRO had written and included no description on the memo line of the check, and defendant ASGHARI immediately withdrew $1,000 cash.

<u>Overt Act No. 103:</u>  On December 11, 2019, defendant NAVARRO deposited $1,000 and $85 in cash, respectively, into Personal Account #1.

<u>Overt Act No. 104:</u>  On December 16, 2019, defendant NAVARRO and defendant ASGHARI spent $355.96 from Campaign funds for a Southwest Airlines ticket for Attorney A to travel to and from San Francisco in connection with defendant NAVARRO's criminal stalking case.

Overt Act No. 105:  On December 19, 2019, defendant ASGHARI caused check 1098 for $2,000 to be written to Attorney A from the Asghari U.S. Bank Account.

Overt Act No. 106:  On January 6, 2020, defendant ASGHARI deposited check 1201 for $3,000 from the Campaign Account into the Asghari U.S. Bank Account, which defendant NAVARRO had written while in custody in connection with his criminal stalking case and included "assistant" on the memo line of the check.

Overt Act No. 107:  On January 7, 2020, defendant ASGHARI wrote a check for $250 from the Asghari U.S. Bank Account to Attorney B, who also represented defendant NAVARRO in connection with defendant NAVARRO's criminal stalking case.

Overt Act No. 108:  On January 17, 2020, defendant NAVARRO and defendant ASGHARI spent $3,500 from Campaign funds to pay Attorney B.

Overt Act No. 109:  Between January 17, 2020, and January 21, 2020, defendant ASGHARI wrote two checks totaling $4,000 from the Asghari U.S. Bank Account to Attorney B.

Overt Act No. 110:  On January 24, 2020, on a recorded jail call, defendant NAVARRO told defendant ASGHARI to pay herself $1,500 from the Campaign as a "salary."  When defendant ASGHARI said, "you don't have to," defendant NAVARRO replied, "just do that – do that $1,500, okay? . . . when I get out, I'll ask treasurer to report all that . . . They make so much money from me . . . they're going to do anything I ask them."

Overt Act No. 111:  On February 14, 2020, defendants NAVARRO and ASGHARI spent $4,750 from Campaign funds to pay Attorney B.

Overt Act No. 112:  On March 9, 2020, defendant ASGHARI cashed check 1218 for $1,650 cash from the Campaign Account, which defendant

ASGHARI had written to herself while defendant NAVARRO was in custody and included "Assistant Jan 7, to Jan 25" on the memo line of the check.

Overt Act No. 113:  On March 16, 2020, defendants NAVARRO and ASGHARI spent $2,922.99 from Campaign funds to pay Attorney B.

Overt Act No. 114:  On March 25, 2020, defendant ASGHARI deposited check 1222 for $3,700 from the Campaign Account to the Brava Account, which defendant ASGHARI had written and included no description in the memo line of the check.

Overt Act No. 115:  On April 21, 2020, defendants NAVARRO and ASGHARI spent $2,500 from Campaign funds to pay Attorney B.

Overt Act No. 116:  On May 4, 2020, defendant ASGHARI deposited check 1224 for $1,400 from the Campaign Account to the Brava Account, which defendant ASGHARI had written "consulting" on the memo line of the check.

Overt Act No. 117:  On June 10, 2020, defendant ASGHARI deposited check 1227 for $5,675.15 from the Campaign Account to the Brava Account, which defendant ASGHARI had written and included "consulting fee" on the memo line of the check.

Overt Act No. 118:  On June 29, 2020, defendant NAVARRO and Individual A went to a Wells Fargo bank, and Individual A cashed check 1025 for $4,000 from the Campaign Account, which defendant NAVARRO had written and included "phone calls/logistical support" on the memo line of the check.  At defendant NAVARRO's direction, Individual A then gave $4,000 cash to defendant NAVARRO.

Overt Act No. 119:  On June 29, 2020, defendant NAVARRO deposited $4,300 cash into Personal Account #1 and made a $562 cash payment toward one of defendant NAVARRO's personal credit cards.

Overt Act No. 120:  On July 1, 2020, defendant NAVARRO and Individual A went to a Wells Fargo bank, and Individual A cashed check 1243 for $3,000, which defendant NAVARRO had written and included "phone banking research" on the memo line of the check. At defendant NAVARRO's direction, Individual A then gave $3,000 cash to defendant NAVARRO.

Overt Act No. 121:  On July 1, 2020, defendant NAVARRO made two cash deposits of $2,400 and $340, respectively, into Personal Account #1.

COUNTS TWO THROUGH FOURTEEN

[18 U.S.C. §§ 1343, 2(a)]

[ALL DEFENDANTS]

A. THE SCHEME TO DEFRAUD

52. Beginning on a date unknown to the Grand Jury, but no later than on or about July 17, 2017, and continuing through on or about April 2, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants OMAR NAVARRO, DORA ASGHARI, and ZACHARIAS DIAMANTIDES-ABEL ("ABEL"), each aiding and abetting the other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the Campaign as to material matters, and to obtain funds from the Campaign and its donors by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, affecting a financial institution.

53. The scheme to defraud operated, in substance, in the following manner:

   a. Defendant NAVARRO would represent publicly and to donors that he was running a Campaign for Congress, which is subject to restrictions on how contributions may be spent.

   b. Defendant NAVARRO would submit personal expenses to the Campaign for reimbursement claiming they were for Campaign purposes.

   c. Defendant NAVARRO would issue checks, or cause checks to be issued, from the Campaign Account, to other individuals, including defendant ASGHARI, defendant ABEL, Individual A, and Individual B, purporting to be payments for work performed by such persons on behalf of the Campaign.

1          d.    At defendant NAVARRO's direction, these other

2    individuals, including defendant ASGHARI, defendant ABEL, Individual

3    A, and Individual B, then would transfer all or a portion of the

4    payment back to defendant NAVARRO.

5          e.    Defendant NAVARRO would issue checks, or cause checks

6    to be issued, from the Campaign Account, to Brava Consulting, which

7    was owned and operated by defendant ASGHARI, purporting to be

8    payments for work performed by the entity on behalf of the Campaign.

9          f.    Defendants NAVARRO and ASGHARI would transfer or cause

10   to be transferred such payments from Brava Consulting to ON Strategic

11   Marketing, which defendant NAVARRO would then withdraw for his own

12   personal use and benefit.

13         g.    Defendant NAVARRO would issue checks, or cause checks

14   to be issued, from the Campaign Account, to the United Latino

15   Foundation, describing the purpose of the contribution in FEC reports

16   as charitable donations.

17         h.    Defendant NAVARRO then would transfer, or cause to be

18   transferred, such payments from United Latino Foundation to defendant

19   NAVARRO's personal bank accounts, on which defendant NAVARRO would

20   then withdraw for his own personal use and benefit.

21         i.    Defendant NAVARRO would not report the pass-through

22   payments that he received from the Campaign as a salary to the FEC or

23   to his Campaign's donors and would instead cause Individual C to file

24   false reports with the FEC on defendant NAVARRO's behalf representing

25   that such payments were for work performed by others on behalf of the

26   Campaign.

27         j.    Defendant NAVARRO would receive reimbursement from the

28   Campaign for his personal expenses, including meals with his

significant other, trips to Las Vegas, entertainment, and retail
purchases.

k.   Defendant NAVARRO would use Campaign funds to acquire
gift cards on the basis that the gift cards purportedly were being
used for Campaign expenses, which he then would use to pay for
personal expenses.

l.   Defendant NAVARRO would not report to the FEC or to
his Campaign donors that these payments were for personal expenses
and instead would cause Individual C and Individual G to file false
reports with the FEC on defendant NAVARRO's behalf representing that
such payments were for Campaign expenses.

m.   Defendant NAVARRO would use an interstate wire to
communicate with Individual C, who was preparing reports for the FEC
and keeping books on behalf of the Campaign at defendant NAVARRO's
direction, and falsely represent the nature of expenses as Campaign-
related, when they were in fact personal.

n.   At defendant NAVARRO's direction, Individual C would
use an interstate wire to transmit FEC reports containing the false
representations about the expenditure of the Campaign funds.

o.   Defendants NAVARRO, ASGHARI, and ABEL, and others
acting at defendant NAVARRO's direction, would use an interstate wire
to withdraw money from the Campaign Account.

B.   USE OF THE WIRES

54.   On or about the dates listed below, in Los Angeles County,
within the Central District of California, and elsewhere, defendants
NAVARRO, ASGHARI, and ABEL, each aiding and abetting the other, for
the purpose of executing the above-described scheme to defraud,

34

caused the transmission of a wire communication in interstate

commerce, namely:

| COUNT | DEFENDANT(S) | DATE | WIRE |
|-------|--------------|------|------|
| TWO | NAVARRO, ASGHARI | 11/7/18 | A $3,000 withdrawal from the Campaign Account through check 1072 addressed to defendant ASGHARI |
| THREE | NAVARRO | 4/1/19 | A $4,000 withdrawal from the Campaign Account through check 1006 addressed to Individual A |
| FOUR | NAVARRO | 4/24/19 | A $3,000 withdrawal from the Campaign Account through check 1021 addressed to Individual A |
| FIVE | NAVARRO, ABEL | 4/30/19 | A $3,000 withdrawal from the Campaign Account through check 1016 addressed to defendant ABEL |
| SIX | NAVARRO | 5/22/19 | A $2,000 withdrawal from the Campaign Account through check 1017 addressed to Individual A |
| SEVEN | NAVARRO, ABEL | 6/26/19 | A $2,000 withdrawal from the Campaign Account through check 1020 addressed to defendant ABEL |
| EIGHT | NAVARRO, ASGHARI | 9/3/19 | A $2,400 withdrawal from the Campaign Account through check 1003 addressed to defendant ASGHARI |
| NINE | NAVARRO | 9/20/19 | A $1,100 withdrawal from the Campaign Account through check 1253 addressed to Individual B |
| TEN | NAVARRO | 10/22/19 | A $1,200 withdrawal from the Campaign Account through check 1202 addressed to Individual B |
| ELEVEN | NAVARRO, ASGHARI | 11/18/19 | A $2,500 withdrawal from the Campaign Account through check 1263 addressed to defendant ASGHARI |
| TWELVE | NAVARRO, ASGHARI | 12/3/19 | A $3,000 withdrawal from the Campaign Account through check 1204 addressed to defendant ASGHARI |

| COUNT | DEFENDANT(S) | DATE | WIRE |
|---|---|---|---|
| THIRTEEN | NAVARRO, ASGHARI | 12/11/19 | A $2,500 withdrawal from the Campaign Account through check 1206 addressed to defendant ASGHARI |
| FOURTEEN | NAVARRO, ASGHARI | 1/7/20 | A $3,000 withdrawal from the Campaign Account through check 1201 addressed to defendant ASGHARI |

COUNTS FIFTEEN THROUGH TWENTY-EIGHT

[18 U.S.C. §§ 1519, 2(a), 2(b)]

[ALL DEFENDANTS]

55.   On or about the dates listed below, within the Central District of California, and elsewhere, defendants OMAR NAVARRO, DORA ASGHARI, and ZACHARIAS DIAMANTIDES-ABEL, each aiding and abetting the other, knowingly concealed, covered up, falsified, and made a false entry in, and willfully caused to be concealed, covered up, falsified, and made a false entry in, the record and document listed below with the intent to impede, obstruct, and influence the investigation and proper administration of matters within the jurisdiction of the Federal Election Commission and the Federal Bureau of Investigation, and in relation to and in contemplation of such matters:

| COUNT | DEFENDANT(S) | DATE | FEC FORM 3 REPORT OF RECEIPTS AND DISBURSEMENTS |
|---|---|---|---|
| FIFTEEN | NAVARRO | 10/15/18 | 2018 October Quarterly Report (FEC Form 3) |
| SIXTEEN | NAVARRO | 10/25/18 | 2018 Pre-General Report (FEC Form 3) |
| SEVENTEEN | NAVARRO | 12/6/18 | 2018 Post-General Report (FEC Form 3) |
| EIGHTEEN | NAVARRO | 4/15/19 | 2019 April Quarterly Report (FEC Form 3) |
| NINETEEN | NAVARRO | 7/15/19 | 2019 July Quarterly Report (FEC Form 3) |
| TWENTY | NAVARRO | 7/15/19 | 2019 Amended April Quarterly Report (FEC Form 3) |
| TWENTY-ONE | NAVARRO | 9/19/19 | 2018 Amended Year-End Report (FEC Form 3) |

| COUNT | DEFENDANT(S) | DATE | FEC FORM 3 REPORT OF RECEIPTS AND DISBURSEMENTS |
|-------|--------------|------|------------------------------------------------|
| TWENTY-TWO | NAVARRO ASGHARI | 9/19/19 | 2018 Amended Post-General Report (FEC Form 3) |
| TWENTY-THREE | NAVARRO | 9/19/19 | 2018 Amended Pre-General Report (FEC Form 3) |
| TWENTY-FOUR | NAVARRO ABEL | 9/19/19 | 2018 Amended October Quarterly Report (FEC Form 3) |
| TWENTY-FIVE | NAVARRO ABEL | 9/23/19 | 2019 Amended July Quarterly Report (FEC Form 3) |
| TWENTY-SIX | NAVARRO | 9/23/19 | 2019 Second Amended April Quarterly Report (FEC Form 3) |
| TWENTY-SEVEN | NAVARRO ASGHARI | 10/15/19 | 2019 October Quarterly Report (FEC Form 3) |
| TWENTY-EIGHT | NAVARRO ASGHARI | 2/2/20 | 2019 Year-End Report (FEC Form 3) |

1              COUNTS TWENTY-NINE THROUGH FORTY

2                 [18 U.S.C. §§ 1519, 2(a)]

3              [DEFENDANTS NAVARRO AND ASGHARI]

4      56.  On or about the dates listed below, within the Central

5 District of California, and elsewhere, defendants OMAR NAVARRO and

6 DORA ASGHARI, each aiding and abetting the other, knowingly

7 concealed, covered up, falsified, and made a false entry in the

8 record, document, and tangible object listed below with the intent to

9 impede, obstruct, and influence the investigation and proper

10 administration of matters within the jurisdiction of the Federal

11 Election Commission and the Federal Bureau of Investigation, and in

12 relation to and in contemplation of such matters:

| COUNT | DEFENDANT(S) | DATE | DESCRIPTION |
|---|---|---|---|
| TWENTY-NINE | NAVARRO | 4/1/19 | Check 1006 from the Campaign Account to Individual A for $4,000 with description "assistant" in the memo line |
| THIRTY | NAVARRO | 4/24/19 | Check 1021 from the Campaign Account to Individual A for $3,000 with description "website modifaction" [sic] in the memo line |
| THIRTY-ONE | NAVARRO | 4/26/19 | Check 1009 from the Campaign Account to Brava Consulting for $3,000 with description "direct mail post cards" in the memo line |
| THIRTY-TWO | NAVARRO | 4/30/19 | Check 1016 from the Campaign Account to defendant ABEL for $3,000 with description "assistant 3/14 4/14" in the memo line |
| THIRTY-THREE | NAVARRO | 5/22/19 | Check 1017 from the Campaign Account to Individual A for $2,000 with description "literature distribution" in the memo line |

| COUNT | DEFENDANT(S) | DATE | DESCRIPTION |
|-------|--------------|------|-------------|
| THIRTY-FOUR | NAVARRO | 6/3/19 | Check 1022 from the Campaign Account to Brava Consulting for $2,000 with description "2nd mailing" in the memo line |
| THIRTY-FIVE | NAVARRO | 6/5/19 | Check 3002 from the Campaign Account to Individual A for $2,500 with no description in the memo line |
| THIRTY-SIX | NAVARRO | 6/10/19 | Check 1003 from the Campaign Account to the United Latino Foundation for $2,000 with no description in the memo line |
| THIRTY-SEVEN | NAVARRO | 9/20/19 | Check 1202 from the Campaign Account to Individual B for $1,100 with description "paid walking" in the memo line |
| THIRTY-EIGHT | NAVARRO ASGHARI | 12/11/19 | Check 1206 from the Campaign Account to defendant ASGHARI for $2,500 with no description in the memo line |
| THIRTY-NINE | NAVARRO | 6/29/20 | Check 1025 from the Campaign Account to Individual A for $4,000 with the description "phone calls/logistical support" in the memo line |
| FORTY | NAVARRO | 7/1/20 | Check 1243 from the Campaign Account to Individual A for $3,000 with the description "phone banking research" in the memo line |

COUNT FORTY-ONE

[52 U.S.C. §§ 30109(d), 30114(b)(1)]

[DEFENDANT NAVARRO]

57.   In the calendar year 2018, within the Central District of
California, and elsewhere, defendant OMAR NAVARRO knowingly and
willfully converted $25,000 and more of Campaign funds to his
personal use by using them to fulfill personal commitments,
obligations, and expenses that would have existed irrespective of
defendant NAVARRO's election campaign or duties as a holder of
federal office.

COUNT FORTY-TWO

[52 U.S.C. §§ 30109(d), 30114(b)(1)]

[DEFENDANT NAVARRO]

58.   In the calendar year 2019, within the Central District of California, and elsewhere, defendant OMAR NAVARRO knowingly and willfully converted $25,000 and more of Campaign funds to his personal use by using them to fulfill personal commitments, obligations, and expenses that would have existed irrespective of defendant NAVARRO's election campaign or duties as a holder of federal office.

                            COUNT FORTY-THREE

                    [52 U.S.C. §§ 30109(d), 30114(b)(1)]

                           [DEFENDANT NAVARRO]

     59.  In the calendar year 2020, within the Central District of California, and elsewhere, defendant OMAR NAVARRO knowingly and willfully converted $25,000 and more of Campaign funds to his personal use by using them to fulfill personal commitments, obligations, and expenses that would have existed irrespective of defendant NAVARRO's election campaign or duties as a holder of federal office.

1

FORFEITURE ALLEGATION

2

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3    1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Section 981(a)(1)(C) and Title 28, United States

7    Code, Section 2461(c), in the event of any defendant's conviction of

8    the offenses set forth in any of Counts One through Fifteen of this

9    First Superseding Indictment.

10    2.    Any defendant so convicted shall forfeit to the United

11    States of America the following:

12        (a)    all right, title, and interest in any and all

13    property, real or personal, constituting, or derived from, any

14    proceeds traceable to the offenses; and

15        (b)    To the extent such property is not available for

16    forfeiture, a sum of money equal to the total value of the property

17    described in subparagraph (a).

18    3.    Pursuant to Title 21, United States Code, Section 853(p),

19    as incorporated by Title 28, United States Code, Section 2461(c), any

20    defendant so convicted shall forfeit substitute property, up to the

21    value of the property described in the preceding paragraph if, as the

22    result of any act or omission of said defendant, the property

23    described in the preceding paragraph or any portion thereof (a)

24    cannot be located upon the exercise of due diligence; (b) has been

25    transferred, sold to, or deposited with a third party; (c) has been

26    placed beyond the jurisdiction of the court; (d) has been

27    //

28    //

44

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3

4

5                                              A TRUE BILL

6

7                                              /S/

8                                              Foreperson

9  E. MARTIN ESTRADA
   United States Attorney
10

11

12 MACK E. JENKINS
   Assistant United States Attorney
13 Chief, Criminal Division

14 LINDSEY GREER DOTSON
   Assistant United States Attorney
15 Chief, Public Corruption
   and Civil Rights Section
16
   CASSIE D. PALMER
17 Assistant United States Attorney
   Deputy Chief, Public Corruption
18 and Civil Rights Section

19 FRANCES S. LEWIS
   Assistant United States Attorney
20 Public Corruption and Civil
   Rights Section
21
   THOMAS RYBARCZYK
22 Assistant United States Attorney
   Public Corruption and Civil
23 Rights Section

24

25

26

27

28