JENNIFER L. WAIER
Acting United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
FRANCES S. LEWIS (Cal. Bar No. 291055)
Assistant United States Attorney
Chief, General Crimes Section
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorney
Acting Chief, Public Corruption and Civil
Rights Section
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:     (213) 894-4850/8452/0304
     Facsimile:     (213) 894-0141
     E-mail:        frances.lewis@usdoj.gov
                    thomas.rybarczyk@usdoj.gov
                    juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-461(A)-MCS |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT OMAR NAVARRO |
| v. | |
| OMAR NAVARRO, | |
| Defendant. | |

1.    This constitutes the plea agreement between OMAR NAVARRO ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.    Defendant agrees to:

a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count five of the first superseding indictment in <u>United States v. OMAR NAVARRO</u>, CR No. 23-461(A)-MCS, which charges defendant with Wire Fraud, in violation of 18 U.S.C. § 1343.

b.    Not contest the Factual Basis agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.    To request, at the time of sentencing, that defendant be sentenced to a term of imprisonment of no less than 33 months' imprisonment.

<u>THE USAO'S OBLIGATIONS</u>

3.    The USAO agrees to:

2

1          a.   Not contest the Factual Basis agreed to in this

2    agreement.

3          b.   Abide by all agreements regarding sentencing contained

4    in this agreement.

5          c.   At the time of sentencing, move to dismiss the

6    remaining counts of the first superseding indictment and underlying

7    indictment as against defendant.  Defendant agrees, however, that at

8    the time of sentencing the Court may consider any dismissed charges

9    in determining the applicable Sentencing Guidelines range, the

10   propriety and extent of any departure from that range, and the

11   sentence to be imposed.

12         d.   At the time of sentencing, provided that defendant

13   demonstrates an acceptance of responsibility for the offense up to

14   and including the time of sentencing, recommend a two-level reduction

15   in the applicable Sentencing Guidelines offense level, pursuant to

16   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

17   additional one-level reduction if available under that section.

18         e.   To recommend to the Court at the time of sentencing

19   that defendant be sentenced to a term of imprisonment of no more than

20   41 months' imprisonment.

21                      <u>NATURE OF THE OFFENSE</u>

22   4.   Defendant understands that for defendant to be guilty of

23   the crime charged in count five, that is, wire fraud, the following

24   must be true: (1) defendant knowingly participated in a scheme or

25   plan to defraud, or a scheme or plan for obtaining money or property

26   by means of false or fraudulent pretenses, representations, or

27   promises; (2) the statements made as part of the scheme were

28   material; that is, they had a natural tendency to influence, or were

capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and (4) the defendant used, or caused to be used, an interstate wire to carry out or attempt to carry out an essential part of the scheme.

<u>PENALTIES AND RESTITUTION</u>

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is

pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any count dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $265,000 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported

1  from the United States.  Defendant may also be denied United States

2  citizenship and admission to the United States in the future.

3  Defendant understands that while there may be arguments that

4  defendant can raise in immigration proceedings to avoid or delay

5  removal, removal is presumptively mandatory and a virtual certainty

6  in this case.  Defendant further understands that removal and

7  immigration consequences are the subject of a separate proceeding and

8  that no one, including his attorney or the Court, can predict to an

9  absolute certainty the effect of his conviction on his immigration

10  status.  Defendant nevertheless affirms that he wants to plead guilty

11  regardless of any immigration consequences that his plea may entail,

12  even if the consequence is automatic removal from the United States.

13  <u>FACTUAL BASIS</u>

14  　　10.  Defendant admits that defendant is, in fact, guilty of the

15  offense to which defendant is agreeing to plead guilty.  Defendant

16  and the USAO agree to the statement of facts provided below and agree

17  that this statement of facts is sufficient to support a plea of

18  guilty to the charge described in this agreement and to establish the

19  Sentencing Guidelines factors set forth in paragraph 12 below but is

20  not meant to be a complete recitation of all facts relevant to the

21  underlying criminal conduct or all facts known to either party that

22  relate to that conduct.

23  　　Beginning on a date no later than on or about July 17, 2017, and

24  continuing through on or about February 1, 2021, in Los Angeles

25  County, within the Central District of California, and elsewhere,

26  defendant knowingly and with intent to defraud, devised, participated

27  in, and executed a scheme to defraud the "Omar Navarro for Congress"

28  campaign committee (the "Campaign") as to material matters, and to

obtain funds from the Campaign and its donors by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  In doing so, defendant caused the transmission of wire communications in interstate commerce for the purpose of executing this scheme to defraud the Campaign and its donors.

Specifically, defendant ran for Congress on multiple occasions, including in 2016, 2018, and 2020.  On or about April 5, 2017, defendant filed his Statement of Candidacy with the Federal Election Commission ("FEC") declaring his candidacy for the U.S. House of Representatives for the 43rd District in the 2018 election.  In doing so, defendant identified the Campaign as his official campaign committee to fund his election campaign.  Defendant understood that federal law required the Campaign to make regular, public disclosures about the receipt and disbursement of any funds raised or spent on behalf of the Campaign.  As candidate for Congress, defendant knew and understood that campaign funds raised by him and others for his Campaign were restricted to supporting his election efforts and could not be used for the candidate's or defendant's own personal use or enjoyment.

Despite this knowledge, defendant agreed with co-defendant DORA ASGHARI ("ASGHARI"), co-defendant ZACHARIAS DIAMANTIDES-ABEL ("ABEL"), and others to illegally steal and convert Campaign funds for defendant's personal use and enjoyment. Between 2018 and 2020, the Campaign received over $1 million in contributions from donors around the United States who supported defendant's election to Congress.  To access these Campaign funds for his personal use and enjoyment, and to fund his lavish

lifestyle, defendant and others, including co-defendants ABEL
and ASGHARI, engaged in a scheme to illegally transfer cash back
to defendant by accepting Campaign payments from defendant
purportedly for work on the Campaign, which co-defendants
ASGHARI, ABEL, and others would then cash and/or convert to cash
and provide that cash back to defendant.  To further the scheme,
defendant would represent, or cause to be represented, on those
checks, and thus subsequently be falsely represented to the FEC
via disclosures, that ABEL, ASGHARI, and others, and not
defendant, had received payment from the Campaign for their
services.

     For example, in furtherance of this scheme, on or before April
30, 2019, defendant wrote a $3,000 Campaign check to co-defendant
ABEL for little or no work performed by co-defendant ABEL for the
Campaign with the intent that co-defendant ABEL would cash that check
and funnel a substantial amount of the cash back to him for his
personal use.  On April 30, 2019, co-defendant ABEL cashed the $3,000
Campaign check, which caused and involved the transmission of an
interstate wire communication.  Co-defendant ABEL then provided
defendant a substantial amount of the $3,000 in cash, $2,000 of which
defendant took and deposited into his personal Wells Fargo Bank
account at a Wells Fargo Bank Hawthorne Branch.

     In another example, on or before November 18, 2019, defendant
wrote a $2,500 Campaign check to co-defendant ASGHARI for little or
no work performed by co-defendant ASGHARI for the Campaign with the
intent that co-defendant ASGHARI would cash that check and funnel a
substantial amount of the cash back to him for his personal use.  On
November 18, 2019, co-defendant ASGHARI cashed the $2,500 Campaign

check, which caused and involved the transmission of an interstate wire communication.  Co-defendant ASGHARI then provided defendant substantially all of that $2,500 in cash she received from the Campaign check.  The following day, on November 19, 2019, defendant took that money and made three cash deposits totaling $2,340 in his personal account.

Similarly, on or before July 1, 2020, defendant wrote a $3,000 Campaign check to Individual A for no work performed on the Campaign with the intent that Individual A would cash that check and funnel all of the cash back to defendant for his personal use.  Defendant then gave the check to Individual A and went with him to a Wells Fargo Bank, where Individual A cashed the check and handed defendant $3,000 in cash for defendant's personal use.

As a further part of this scheme, defendant would issue checks, or cause checks to be issued, from the Campaign's official account ("Campaign Account"), to Brava Consulting, which was owned and operated by co-defendant ASGHARI, purporting to be payments for work performed by the entity on behalf of the Campaign.  Defendant and co-defendant ASGHARI would transfer or cause to be transferred such payments from Brava Consulting to ON Strategic Marketing, which defendant owned, and defendant would then withdraw these funds for his own personal use and benefit.  Defendant had directed co-defendant ASGHARI to form Brava Consulting for the purposes of embezzling more money out of the Campaign.  To further the scheme, defendant would represent, or cause to be represented, on those checks, and thus subsequently represented to the FEC via disclosures, that Brava Consulting and not defendant had received payment from the Campaign for Brava Consulting's services.

For example, on or before June 3, 2019, defendant wrote a $2,000 Campaign check to Brava Consulting for no work performed for the Campaign with the intent that co-defendant ASGHARI would cash that check and funnel a substantial amount of the cash back to him for his personal use.  On June 3, 2019, co-defendant ASGHARI deposited a $2,000 Campaign Check into the Brava Consulting bank account.  On June 4, 2019, co-defendant ASGHARI then provided defendant a check from the Brava Consulting bank account addressed to ON Strategic Marketing for $1,100, on which co-defendant ASGHARI had written on the memo line was for "marketing."  Defendant deposited the check into the ON Strategic Marketing account on June 4, 2019.  On June 5, 2019, defendant transferred $1,000 from the ON Strategic Marketing account into one of his personal accounts.

Additionally, as part of the scheme, defendant would receive reimbursement from the Campaign for his personal expenses, including meals with his significant other, trips to Las Vegas, entertainment, and retail purchases, including spending $2,630.12 at the Bellagio Hotel in Las Vegas with Individual D in January 2019.  Defendant NAVARRO would also use Campaign funds to acquire gift cards on the basis that the gift cards purportedly were being used for Campaign expenses, which he then would use to pay for personal expenses, including purchasing a $270 gift card from Target that used to buy personal items such as Nintendo Switch video games.  He would further direct payments from his Campaign to pay other personal expenses, including for a private investigator and personal criminal defense attorneys, including spending at least $12,822.99 in legal fees to defend his criminal stalking case.  Defendant would not report to the FEC or to his Campaign donors that these payments were for personal

expenses and instead would cause Individual C and Individual G to file false reports with the FEC on defendant behalf representing that such payments were for Campaign expenses.

In total, this scheme deprived the Campaign and its donors of at least $250,000, but less than $550,000, in Campaign funds.

## SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss greater than $250,000 | +12 | U.S.S.G. § 2B1.1(b)(1)(G) |
| Leadership Role Adjustment | +2 | U.S.S.G. § 3B1.1(c)__ |
| Acceptance of Responsibility | -3 | U.S.S.G § 3E1.1(a),(b) |
| Total Offense Level | 18 | |

At the time of sentencing, the USAO will agree to a two-level downward adjustment for acceptance of responsibility and, if

applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b) only if the conditions set forth in paragraph 2 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 25 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

13.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.  Subject to the agreed upon restrictions in paragraphs 2 and 3, defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

13

1    the statement of facts provided herein is insufficient to support

2    defendant's plea of guilty.

3                <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

4       17.  Defendant agrees that, provided the Court imposes a total

5    term of imprisonment on all counts of conviction of no more than 48

6    months' imprisonment, defendant gives up the right to appeal all of

7    the following: (a) the procedures and calculations used to determine

8    and impose any portion of the sentence; (b) the term of imprisonment

9    imposed by the Court; (c) the fine imposed by the Court, provided it

10    is within the statutory maximum; (d) to the extent permitted by law,

11    the constitutionality or legality of defendant's sentence, provided

12    it is within the statutory maximum; (e) the amount and terms of any

13    restitution order, provided it requires payment of no more than

14    $265,000; (f) the term of probation or supervised release imposed by

15    the Court, provided it is within the statutory maximum; and (g) any

16    of the following conditions of probation or supervised release

17    imposed by the Court: the conditions set forth in Second Amended

18    General Order 20-04 of this Court; the drug testing conditions

19    mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

20    drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21       18.  The USAO agrees that, provided (a) all portions of the

22    sentence are at or below the statutory maximum specified above and

23    (b) the Court imposes a term of imprisonment of no less than 33

24    months' imprisonment, the USAO gives up its right to appeal any

25    portion of the sentence, with the exception that the USAO reserves

26    the right to appeal the amount of restitution ordered if that amount

27    is less than $265,000.

28

## RESULT OF WITHDRAWAL OF GUILTY PLEA

19.  Defendant agrees that if, after entering a guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

20.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement

## EFFECTIVE DATE OF AGREEMENT

21.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

22.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

16

1  against defendant, and defendant waives and gives up any claim under

2  the United States Constitution, any statute, Rule 410 of the Federal

3  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

4  Procedure, or any other federal rule, that the statements or any

5  evidence derived from the statements should be suppressed or are

6  inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

## OFFICE NOT PARTIES

9      24.  Defendant understands that the Court and the United States

10  Probation and Pretrial Services Office are not parties to this

11  agreement and need not accept any of the USAO's sentencing

12  recommendations or the parties' agreements to facts or sentencing

13  factors.

14      25.  Defendant understands that both defendant and the USAO are

15  free to: (a) supplement the facts by supplying relevant information

16  to the United States Probation and Pretrial Services Office and the

17  Court, (b) correct any and all factual misstatements relating to the

18  Court's Sentencing Guidelines calculations and determination of

19  sentence, and (c) argue on appeal and collateral review that the

20  Court's Sentencing Guidelines calculations and the sentence it

21  chooses to impose are not error, although each party agrees to

22  maintain its view that the calculations in paragraph 122 are

23  consistent with the facts of this case.  While this paragraph permits

24  both the USAO and defendant to submit full and complete factual

25  information to the United States Probation and Pretrial Services

26  Office and the Court, even if that factual information may be viewed

27  as inconsistent with the Factual Basis or Sentencing Factors agreed

28  to in this agreement, this paragraph does not affect defendant's and

17

the USAO's obligations not to contest the facts agreed to in this agreement.

26. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

1

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2    28.    The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

7

8 JENNIFER L. WAIER
Acting United States Attorney

9

10 *Juan M. Rodriguez*                                    June 18, 2025
THOMAS F. RYBARCZYK                          _____
11 FRANCES S. LEWIS                                      Date
JUAN M. RODRIGUEZ
12 Assistant United States Attorney

13                                                        6/17/2025
OMAR NAVARRO                                 _____
14 Defendant                                             Date

15 *David R Evans*                                        June 17, 2025
_____                  _____
16 DAVID R. EVANS                                        Date
Attorney for Defendant OMAR NAVARRO

17

18

19

20

21

22

23

24

25

26

27

28

19

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          6/17/2025
OMAR NAVARRO                              Date
Defendant

20

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am OMAR NAVARRO's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

*David R Evans*
_____

DAVID R. EVANS
Attorney for Defendant OMAR NAVARRO

June 17, 2025
_____
Date